IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THE SAVINGS BANK MUTUAL<br>LIFE INSURANCE COMPANY<br>OF MASSACHUSETTS,<br><br>    Plaintiff,<br><br>v.<br><br>JAY BRANDON BLACKSTON,<br><br>    Defendant. | §§§§§§§§§§§§§ C.A. No. 4:23-cv-00194 |

## COMPLAINT

Plaintiff The Savings Bank Mutual Life Insurance Company of Massachusetts ("SBLI") complains of Defendant Jay Brandon Blackston ("Blackston") and states:

## INTRODUCTORY STATEMENT

**1.** This case arises out of Blackston's failure to repay the $253,097.18 in unearned commissions he received, as the producer of record, in connection with SBLI's issuance in 2022 of 144 life insurance policies (collectively, the "Terminated Policies"). In connection with its issuance of these policies, SBLI advanced to Blackson the first-year commissions for such policies, which were typically 75% of the first-year premium and far exceeded the initial monthly premiums SBLI received to place the Terminated Policies in force. Many of the Terminated Policies ended up not being taken by the ostensible applicants, and other policies were either surrendered or allowed to lapse for non-payment of premium within months of being issued. Blackston is contractually required to repay all commissions he received from SBLI in connection with the Terminated Policies and to reimburse SBLI for the additional losses and attorney's fees resulting from his conduct.

## PARTIES

2. **SBLI.** SBLI is a mutual insurance corporation organized under the laws of the Commonwealth of Massachusetts with its principal office and place of business in Woburn, Massachusetts.[1]

3. **Blackston.** Blackston is a Texas citizen who may be served at his residence address, 5700 Oakleaf Drive, Apt. 1414, Fort Worth, Texas 76132-2446, or wherever he may be found.

## JURISDICTION AND VENUE

4. **Jurisdiction.** The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). SBLI is and has at all relevant times been a citizen of Massachusetts, and Blackston is and has at all relevant times been a citizen of Texas. Complete diversity of citizenship thus exists between SBLI, on the one hand, and Blackston, on the other hand. The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5. **Venue.** Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as Blackston resides here and a substantial part of the events or omissions giving rise to SBLI's claims occurred here.

## OPERATIVE FACTS

6. **The Producers Agreement.** On December 7, 2021, SBLI, Blackston (as the Producer), and Advantage One Brokers (as the General Agent) entered into an SBLI Producers Agreement (the "Producers Agreement"), in which SBLI appointed Blackston to submit

---

[1] SBLI is a citizen of Massachusetts for purposes of diversity jurisdiction. *See Pastor v. State Farm Mutual Auto. Ins. Co.*, 487 F.3d 1042, 1048 (7th Cir. 2007) (observing that mutual insurance companies and corporations "are treated the same for purposes of determining whether the requirements of diversity jurisdiction are satisfied"); *Lowe v. State Farm Mutual Auto. Ins. Co.*, No. 4:16cv135-RH/CAS, 2016 WL 9223865, at *1 (N.D. Fla. Apr. 8, 2016) (noting that courts "have consistently treated mutual insurance companies as corporations" for purposes of diversity jurisdiction).

applications and initial premiums for individual life insurance policies and annuity contracts issued by SBLI.  Among other duties, Blackston agreed to (1) solicit and promptly transmit applications for policies to be issued by SBLI, (2) promptly remit, for credit against the proper account, all of the premium payments he received, (3) conduct himself in a way so as to not affect adversely SBLI's business or reputation, and (4) comply with all of SBLI's rules, procedures, and regulations.  Blackston acknowledged in the Producers Agreement he did not have the authority to (among other prohibitions) alter, modify, waive, or change the terms of any of SBLI's contracts or incur any debts or liability for or against SBLI.  Blackston agreed he would forfeit all rights to commissions if (among other conduct) he misappropriated any of SBLI's money or property, subjected SBLI to liability due to his misfeasance or malfeasance, committed an act of fraud, failed to comply with applicable law, failed to conform to SBLI's rules and regulations, engaged in conduct that was grounds for the suspension, revocation, or termination of his insurance license, or failed to pay any indebtedness to SBLI on demand.  Blackston also agreed that his indebtedness to SBLI was payable on demand and, if unpaid, would accrue 12% interest.  Finally, Blackston agreed to indemnify and hold SBLI harmless from any losses, damages, attorney's fees, and expenses (including SBLI's legal expenses) arising out of any negligence, gross negligence, malfeasance, errors, or omissions committed by him.

7. Upon the sale of a life insurance policy, SBLI advanced Blackston up to 75% of a policy's first-year premium in commissions.  SBLI advances commissions based upon its experience and expectation that a newly issued life insurance policy will remain in effect for years, as it does not make economic sense for an insured to pay premiums for a short period and then allow the policy to lapse.

8. From January 2022 through June 2022, SBLI received at least 144 applications listing Blackston as the producer of record.  Although SBLI did not recognize it at the time, each

and every one of the applications listed an email address at yahoo.com or gmail.com, contemplated the payment of the monthly premiums through electronic funds transfer from the insured's bank account, and did not include any adverse information that would have prompted SBLI to investigate the applicant's insurability.  Moreover, many of the applicants offered the same bank account number and/or email address even though their applications did not include any indication they were related to one another in any way.

9. In reliance on the accuracy of the information submitted by Blackston, SBLI issued the Terminated Policies and paid Blackston at least $253,097.18 in commissions.

10. In the ordinary course of business, SBLI would expect to hear from an insured who had recently purchased a policy that either had lapsed or was in danger of lapsing.  Here, however, SBLI received communications from only a few insureds, some of whom claimed they never wanted the policies in the first place and thus demanded premium refunds.

11. Moreover, Blackston took steps to ensure he received an advance of the first-year commissions even though there were difficulties in the payment of the initial premium.  For example, SBLI's efforts to withdraw the initial premium from the bank account listed in the application were occasionally met with certain responses from the financial institution, such as insufficient funds in the account, the customer advised the transaction was not authorized, the payment was stopped, or the account was closed, did not exist, or could not be located.  When the initial premium is not paid, SBLI charges back the producer's commission payments for that policy, resulting in a negative balance for the producer.  To circumvent SBLI's chargeback process and enable him to secure unearned commission payments, Blackston would cause the bank account information for the policy at issue to be updated on SBLI's online portal and would then call SBLI to request that the premium be redrafted.  These efforts allowed Blackston to receive full advance commission payments on subsequently issued policies.

12. According to SBLI's records, 38 of the Terminated Policies were not taken, meaning that an initial premium payment was never made or that an initial premium payment was made but the policy owner decided within the policy's "free look" period that they no longer wanted the policy, 105 policies lapsed, and one policy was surrendered.

13. Under the Producers Agreement, SBLI had the right to recover Blackston's indebtedness from any unpaid commissions or other compensation due to him. As a result of SBLI's exercise of its right of offset, Blackston's current indebtedness for unearned commissions is $253,097.18. Notwithstanding written demand, Blackston has failed and refused, and continues to fail and refuse, to repay his indebtedness to SBLI.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

14. SBLI adopts and incorporates by reference paragraphs 1 through 13 above as if the same were set forth in full.

15. In the Producers Agreement, Blackston agreed to (1) solicit and promptly transmit applications for policies to be issued by SBLI, (2) promptly remit, for credit to the proper account, the premium payments he received, (3) conduct himself in a way so as to not affect adversely SBLI's business or reputation, and (4) comply with all of its rules, procedures, and regulations. Blackston agreed he would forfeit all rights to commissions if (among other conduct) he misappropriated any of SBLI's money or property, subjected SBLI to liability due to his misfeasance or malfeasance, committed an act of fraud, failed to comply with applicable law or conform to SBLI's rules and regulations, engaged in conduct that was grounds for the suspension, revocation, or termination of his license, or failed to pay any indebtedness to SBLI on demand. As a result of Blackston's breaches of the Producers Agreement, SBLI has sustained damages in an amount in excess of the minimum jurisdictional limits of this Court, for which it now sues.

## SECOND CAUSE OF ACTION: MONEY HAD AND RECEIVED

16. SBLI adopts and incorporates by reference paragraphs 1 through 13 above as if the same were set forth in full.

17. SBLI paid commissions of at least $253,097.18 to Blackston with respect to the Terminated Policies that were not payable. Even though he knew the commissions were not payable, Blackston exercised dominion and control over funds that did not, in equity and good conscience, belong to him. By virtue of Blackston's receipt and wrongful retention of these funds, SBLI has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, for which it now sues.

## THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

18. SBLI adopts and incorporates by reference paragraphs 1 through 13 above as if the same were set forth in full.

19. SBLI paid commissions of at least $253,097.18 to Blackston with respect to the Terminated Policies that were not payable. Even though he knew the commissions were not payable, Blackston has been unjustly enriched through his exercise of dominion and control over funds that did not, in equity and good conscience, belong to him. By virtue of Blackston's receipt and wrongful retention of these funds, SBLI has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, for which it now sues.

## FOURTH CAUSE OF ACTION: RESTITUTION

20. SBLI adopts and incorporates by reference paragraphs 1 through 13 above as if the same were set forth in full.

21. SBLI paid commissions of at least $253,097.18 to Blackston with respect to the Terminated Policies that were not payable. Even though he knew the commissions were not payable, Blackston has exercised dominion and control over funds that did not, in equity and good

conscience, belong to him.  Blackston must thus make restitution of $253,097.18 (plus interest) to SBLI, for which it now sues.

## ATTORNEY'S FEES

**22.** As a result of Blackston's wrongful acts and omissions, SBLI retained the undersigned attorneys to represent it and agreed to pay their reasonable and necessary fees.  SBLI seeks recovery of its reasonable and necessary attorney's fees, court costs, and expenses through trial and all appeals under applicable Texas law.

## MISCELLANEOUS

**23.** All conditions precedent to the filing of SBLI's claims have been performed by it, have already occurred, or have otherwise been met, waived, or satisfied.

**24.** SBLI reserves the right to supplement its position in this action with the additional information it learns through its ongoing investigation and discovery in this action.

**25.** By filing these claims, SBLI does not waive or release any rights, claims, causes of action, or defenses, or make any election of remedies, but rather expressly reserves all such rights, claims, causes of action, and defenses, whether or not the same have been asserted or may hereafter be asserted in this or any other proceeding.

## PRAYER

**26.** **Relief requested.**  SBLI respectfully requests the following relief:

   **(a)** That Blackston be served with the Complaint and the Summons and required to answer in the time and manner prescribed by law;

   **(b)** That the Court award judgment against Blackston for SBLI's actual damages;

   **(c)** That SBLI recover its reasonable and necessary attorney's fees, court costs, and expenses (including, but not limited to, expert witness fees and expenses) incurred through the trial of this cause and any appeal;

**(d)**   That SBLI recover pre- and post-judgment interest at the highest rate and to the maximum extent provided by law; and

**(e)**   That SBLI have all such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

    Respectfully submitted,

By:   /s/ Andrew C. Whitaker
      Andrew C. Whitaker
      State Bar No. 21273600
      andrew.whitaker@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEY FOR PLAINTIFF
THE SAVINGS BANK MUTUAL
LIFE INSURANCE COMPANY OF
MASSACHUSETTS